# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:17CR474 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| RASHON WILLIS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On November 14, 2017, defendant, Rashon Willis (Willis), was charged in a one-count indictment with knowingly and intentionally distributing 22.2 grams of a mixture or substance containing heroin, a Schedule I controlled substance, and carfentanil, a Schedule II controlled substance, in violation of Title 21, United States Code, § 841(a)(1) and (b)(1)(B). (Doc. No. 1.) On January 4, 2018, Willis filed a motion to suppress all evidence seized during the execution of a search warrant and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 74, 57 L. Ed. 2d 667 (1978). (Doc. No. 12 ["Mot."].) On January 9, 2018, the United States filed a response in opposition to both the motion and request for a *Franks* hearing. (Doc. No. 13 ["Opp'n"].) On January 16, 2018, the Court conducted a hearing at which it heard both evidence and argument relative to the motion and request. For the reasons set forth herein, the motion to suppress is denied. Further, as agreed by the parties at the hearing, Willis' request for an evidentiary hearing for the limited purpose of establishing the location of the trash bin when the trash pulls was granted and was conducted as part of the hearing. The Court finds, however, that

Willis has failed to establish entitlement to a *Franks* hearing, and his request for such proceeding is denied.

   **A. FACTS**

In August 2017, the Euclid Police Department received an anonymous complaint of suspected drug activity coming from 234 East 246th Avenue in Euclid, Ohio (hereinafter "the residence"). (Doc. No. 15-1 ["Gov't Ex. 1"].) Detective Brett Buchs ("Det. Buchs"), a member of the Euclid Police Department, swore an affidavit in support of the request for a search warrant for the residence and presented the affidavit to a state court judge. (*Id.*, Ex. A (Affidavit of Brett Buchs ["Aff."]).) According to the affidavit, an anonymous source reported that a "young black male would come from the residence and engage in 'hand-to-hand' transactions with vehicles that would park in the area." (Aff. ¶ 1.) The source was able to take a picture of the individual engaged in the suspected drug activity and provide it to the police. (*Id.*)

Based upon the anonymous complaint, the police conducted an investigation which revealed, in part, the following:

1. Records from the Ohio Bureau of Motor Vehicles ("BMV") and prior police reports from the residence, indicated that Willis was living at the residence. (Aff. ¶ 2.)
2. Willis closely resembled the male in the picture taken by the anonymous source. (*Id.* ¶ 2.)
3. Willis' date of birth is May 17, 1997. (Doc. No. 15-3 ["Gov't Ex. 3"] at 85.)
4. Willis is a known member of a local gang called "The Jake Gang" and other known members of The Jake Gang have drug trafficking cases/charges. (Aff. ¶ 4.)
5. Within the month preceding the application for the search warrant, members of the Euclid Narcotics Unit conducted three trash pulls at the residence, with the last of the trash pulls occurring within 72 hours of the presentation of the affidavit. During the trash pulls

detectives found numerous baggies with marijuana residue, "tear-offs," and mail addressed to Willis. Mail addressed to other known members of The Jake Gang was also recovered during the trash pulls. (*Id*. ¶ 5.)

6. The evidence from the trash pulls was field tested at the Euclid Police Station and tested positive for marijuana. (*Id*. ¶ 6.)

7. Video surveillance revealed Willis coming in and out of the residence. (*Id*. ¶ 7.)

All of this information was included in Det. Buchs' affidavit.

The affidavit also contained information regarding Willis' criminal history (which did not involve drug convictions) and described a Facebook posting of a picture of Willis with three other males on a couch. Willis is depicted in the picture making a "gang sign" and with a "firearm at his foot," while another of the individuals in the picture is depicted "also making a sign" with a firearm on his lap. (*Id*. ¶¶ 3 and 8.) At the hearing, the parties stipulated that the picture had been posted on the Facebook page from which it was captured no later than December 2016, but that Det. Buchs downloaded the picture from the Facebook page during his investigation in September 2017.

Finally, the affidavit contained information from Det. Buchs as to why he believed, based upon his training and experience, evidence of illegal drug activity would be found in the residence, and why he believed the issuance of the search warrant was necessary to prevent the destruction of evidence. (*Id*. ¶¶ 9-17.)

The affidavit was presented to the state court judge on the day it was sworn (September 15, 2017), and the judge issued the search warrant on that same day. (Gov't Ex. 1.)

As to the trash pulls, Det. Buchs testified that they were conducted at the residence on

three separate days: August 30, 2017, September 7, 2017,[1] and September 13, 2017. According to Det. Buchs, on each of the three days officers removed bags of trash from a trash bin that had been placed on the tree lawn in front of the residence. Det. Buchs described the "tree lawn" as the area in front of the residence between the road and the sidewalk. He further testified that the tree lawn ran the length of the front of the property lot line, was approximately four feet in width or depth, and no more than two to three feet off the road. The trash pulls took place each week on a day that the trash bins were placed on the tree lawn for trash collection in that neighborhood. (*See also* Doc. No. 15-2 ["Gov't Ex. 2"]; Doc. No. 15-3 ["Gov't Ex. 3"]; Doc. No. 15-4 ["Gov't Ex. 4"]), which are incident reports that reflect the trash bin was resting on the tree lawn in front of the residence for collection when the trash pulls took place).

Each of the trash pulls produced items that tested positive for marijuana residue. (Gov't Exs. 2, 3, and 4.) In the August 30 trash pull, the police collected "large amounts of sandwich baggies" (many of which had marijuana residue in them) and "tear-offs." Two burnt marijuana cigars as well as mail to Willis were also found in this pull. (Gov't Ex. 2.) In the September 7 trash pull, the police collected "numerous sandwich baggies with marijuana residue," as well as mail addressed to Willis and Jevon Suber. (Gov't Ex. 3.) In the September 13 trash pull, police seized "plastic tare-offs [sic] (packaging material), (2) lottery tickets containing marijuana residue, and U.S. mail and paperwork." (Gov't Ex. 4.)

---

[1] While Det. Buchs testified that the second trash pull took place on September 7, 2017, a fact reflected in the first page of the relevant incident report, the police narrative identifies September 8, 2017 as the date of the pull. The Court finds the September 8, 2017 date to be a clerical error having no bearing on Det. Buchs' credibility.

B. **APPLICABLE LAW AND ANALYSIS**

1. *The Trash Pulls Were Constitutionally Permissible*

Without citing any case authority, Willis claims that the warrantless trash pulls were illegal because "the trash bags searched were not on the curb, were not abandoned, were not open and available for anyone to take [and] as such remained property in which an expectation of privacy remained." (Mot. at 35.) The Court disagrees, as the evidence does not bear out these bald assertions.

Det. Buchs was the only witness to testify as to where the trash bin was located at the time of the trash pulls. At the conclusion of the hearing, the Court found his testimony that the trash bin was on the tree lawn in front of the home credible. Indeed, his testimony is corroborated by the incident reports prepared relative to each trash pull. (*See* Gov't Exs. 2, 3, and 4.) Very simply, the Court finds that at the time of each of the trash pulls, the trash bin had been abandoned by being placed on the tree lawn for trash collection.

In *United States v. Lawrence,* 308 F.3d 623 (6th Cir. 2002), the Sixth Circuit Court of Appeals affirmed a district court's denial of a motion to suppress where—similar to the facts herein—the defendant's trash cans were on a utility strip between the street and the sidewalk. Accordingly, the Court finds that Willis had no reasonable expectation of privacy in the trash and the trash pulls were constitutionally permissible. *See also United States v. Shaffer,* 238 F. Supp. 3d 913, 921 (E.D. Ky. 2017) ("There is no reasonable expectation of privacy in garbage left outside for public collection.") (*quoting California v. Greenwood,* 486 U.S. 35, 40, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988)); *United States v. Moss,* 175 F. Supp. 2d 1067, 1069-71 (M.D. Tenn. 2001) (when the designated time for garbage collection arrives, a person loses any legitimate expectation of privacy in the items discarded in his trash).

## 2. *Probable Cause Existed for Issuance of the Search Warrant*

Relying primarily upon *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016), Willis contends that the affidavit in support of the application for a search warrant for the residence "lacked sufficient factual support necessary to find probable cause to grant the warrant" because (1) the items found in the trash were too remotely related to the residence to establish a basis for probable cause; (2) there is no evidence as to when the items in the trash were placed there or whether the items were ever in the residence; (3) there is nothing in the search warrant that gives the anonymous source any indicia of credibility, reliability, or truthfulness, and that the anonymous source reported only a suspicion of drug activity; (4) that the video surveillance of the residence which showed Willis coming in and out of the residence did not capture any illegal activity; and (5) that the Facebook picture, which Willis claims is misleading, has no relation to the residence and whether there is a likelihood of drugs being found in the residence. (Mot. at 33-36.)

In *Abernathy*, the Sixth Circuit Court of Appeals held that a search warrant based solely on a one-time trash pull from trashcans in which only "several" marijuana roaches and "several" T2-laced plastic bags were recovered, standing alone, was insufficient to create probably cause to issue a search warrant. *Id.* at 256-57. The court reasoned, in part, that the word "several" means "more than one or two but not a lot," and thus determined that "the quantity of roaches and bags found in the trash pull was not large enough to suggest repeated or ongoing marijuana consumption in the residence." *Id*. at 255 (quotation marks and citation omitted). The court also observed that there was nothing to suggest how recently the marijuana may have been placed in the trash or if it actually came from the target residence.

6

As the United States points out, however, the court in *Abernathy* acknowledged that "[i]t is well established in th[e Sixth] Circuit that drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes. *Id*. at 251-52 (citations omitted). In the present case, the United States maintains that Det. Buchs' affidavit contained substantially more evidence than that presented by the detective in *Abernathy* and that Det. Buchs' affidavit contains sufficient facts, in addition to trash pull evidence, to support a finding of probable cause.

Before analyzing the sufficiency of the affidavit, the Court begins with a review of the applicable law. In *United States v. Buffer*, 529 F. App'x 482 (6th Cir. 2013), the Sixth Circuit succinctly summarized the law to establish probable cause for a search warrant when information of alleged illegal activity is provided by an anonymous source, as follows:

> Search warrants must issue "only upon a finding of 'probable cause.' " *United States v. Beals*, 698 F.3d 248, 264 (6th Cir.2012) (quoting U.S. Const. amend. IV). In *Illinois v. Gates*, the Supreme Court established a "totality of the circumstances" test for determining whether probable cause exists:
>
>> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
>
> 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing magistrate must have a "substantial basis" to conclude that evidence of wrongdoing will be found at the location to be searched. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Put another way, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir.1998) (internal quotation marks and citation omitted). "An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit," which is not sufficient to support a finding of probable cause.

7

> *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996) (citing *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). However, reviewing courts must afford "great deference" to the magistrate's finding of probable cause. *See id*. at 1376.
>
> Where, as here, the informant is anonymous, and no information exists as to the informant's reliability, probable cause can still exist if the officer sufficiently corroborates the tip. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir.2010) ("[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." (internal quotation marks and citations omitted)).

*Id.* at 484.

Given the applicable law, coupled with the facts in this case, the Court finds Willis' criticisms of the information contained Det. Buchs' affidavit unavailing. To begin with, by challenging the sufficiency of discrete pieces of information in the affidavit, Willis violates the test established by the Supreme Court which provides that when considering whether probable cause exits, the task of the magistrate is to determine—*based upon the totality of the circumstances*—whether there is a fair probability that contraband or evidence of a crime will be found at the residence. That said, Willis' argument that there is nothing in the search warrant that gives the information provided by the anonymous source any indicia of credibility, reliability, or truthfulness is mistaken and, moreover, misses the mark. As set forth above, where the information is anonymous, and no information exists as to the informant's reliability, probable cause can still exist if there is sufficient police corroboration of the tip. That is exactly what took place here.

The anonymous source complained of suspected drug activity by "a young black male" who would come from the residence and engage in hand-to-hand transactions with vehicles that would park in the area. In conjunction with the complaint, the anonymous source provided the police officers with a picture of the suspect who allegedly engaged in the described activity. The

police officers then conducted an independent investigation which revealed that, based upon BMV records and prior police reports, Willis—a young black twenty year old male who closely resembled the picture taken by the anonymous source—lived at the residence. Video surveillance also confirmed Willis coming in and out of the residence. This portion of the investigation, alone, corroborates a number of pieces of information provided by the anonymous source: specifically, that Willis, a young black twenty year old male who looked like the picture of the suspect supplied by the anonymous source, resided in the residence.

More importantly, prompted by the anonymous complaint, and within the month preceding issuance of the search warrant, the police officers conducted three separate trash pulls at the residence, the last trash pull of which was conducted within 72 hours of presentation of the affidavit in support of the request for the search warrant. The trash pulls revealed "numerous baggies with marijuana residue, 'tear-off[s,'] and mail to Rashon Willis." The suspected marijuana residue was field tested at the Euclid Police station and tested positive for marijuana. This information—independently gathered by the police—again corroborated Willis' presence at the residence and further provided substantiation that illegal drugs were connected to the residence and that there was a fair probability that evidence relating to illegal drugs would be found in the residence. (This is so even disregarding the portion of the anonymous source's report regarding the "'hand-to-hand' transactions with vehicles that would park in the area" as a

basis for the probable cause determination.[2]) Indeed, contrary to Willis' criticism that there is no evidence that the items from the trash pull were ever in the residence, common sense would suggest that there is a fair probability that illegal evidence collected from trash pulls on three separate occasions from a trash bin that was placed directly in front of a residence came from that residence. Common sense would also suggest that finding drug paraphernalia and drug residue on "large amounts" and "numerous" sandwich baggies, in the three trash pulls establishes a fair probability that the drug activity at the residence was ongoing.

Willis also criticizes inclusion of information in the affidavit of his alleged association with a gang (including information regarding the Facebook page Det. Buchs downloaded during his investigation) and of Willis' criminal record that consists of convictions for carrying concealed records and receiving stolen property, as failing to "further the idea that drugs are likely to be found in the residence." (Mot. at 35.) But even if this factual information is not considered in reviewing the propriety of whether the state court judge should have issued the search warrant, the Court finds, for the reasons discussed previously, that the affidavit contained

---

[2] Although unnecessary to a finding of probable cause in this case, under Supreme Court precedent, the observation of the anonymous source regarding the hand-to-hand activity could also have been considered in making the probable cause determination. In *Illinois v. Gates*, 462 U.S. 213, 230 (1983), the Supreme Court instructed courts to apply the "totality-of-the-circumstances analysis" when evaluating whether information obtained from an anonymous source should be credited. The Court instructed that when independent investigative work corroborates information from an anonymous source, a magistrate, for purposes of making "the practical, common-sense judgment called for in making a probable cause determination[,]" could consider that the informant's other assertions also are true. *Id.* at 244. ("'Because an informant is right about some things, he is more probably right about other facts,' . . . including the claim regarding the [] illegal activity." *Id.* (quotation marks and citations omitted).) This is true even if the corroborated assertions are about seemingly innocent facts and the "other facts" that will be credited are of the illegal activity. *Id.*

sufficient facts to establish probable cause to issue a warrant for the search of the residence. That aside, the information regarding the criminal history and gang affiliation is factual, not disputed, and in the instance of the Facebook page, corroborates the information in the affidavit regarding Willis' gang affiliation.

To be sure, one could argue that the information in the affidavit could have been set forth more precisely and, perhaps with more detail (particularly given the detailed information contained in the police incident reports, (Gov't Exs. 2, 3, and 4), but, as the Sixth Circuit observed in *United States v. Leaster*, 35 F. App'x 402, 407 (6th Cir. 2002), "[t]he Supreme Court has held that 'courts should not invalidate . . . warrant[s] by interpreting affidavits in a hypertechnical, rather than a commonsense, manner. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317. Adopting such a hypertechnical approach is inconsistent with the 'Fourth Amendment's strong preference for searches conducted pursuant to warrants.'"

> 3. *Even if the Search Warrant Were Invalidated Due to Lack of Probable Cause, a Good-Faith Basis Existed for the Officers to Reasonably Rely upon the Search Warrant*

For the same reasons he advanced in arguing that the information contained in Det. Buchs' affidavit was insufficient to establish probable cause, Willis contends that the good faith exception to the exclusionary rule, as established in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), is unavailable to the police because it is "unreasonable for an officer to rely on the search warrant." (Mot. at 36.) Additionally, Willis claims that the *Leon* good faith exception is unavailable to the police because including a description of the Facebook picture in the affidavit was "incomplete and misleading." (*Id.* at 37.) Specifically, Willis claims that "[t]he Facebook photo was old and unrelated to any current activity[, and that the photo] sheds a prejudicial light on [Willis] and adds nothing to the inquiry of whether currently, drugs

were likely to be in the home." (*Id.*)

The Sixth Circuit in *Buffer*, *supra,* provided a summary of the law regarding when officers may, in good faith, rely upon a search warrant that is subsequently held defective, as follows:

> [E]ven if a warrant is not supported by probable cause, we cannot automatically assume that materials seized pursuant to it must be suppressed. *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir.2004). In *United States v. Leon*, the Supreme Court held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *486 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead, we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." (citations omitted)). Accordingly, our second task is to determine whether the exclusionary rule is appropriate in this case or whether an exception applies.
>
> One such exception is made for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922, 104 S.Ct. 3405. The Supreme Court reasoned that little is gained by penalizing an officer who "act[ed] with objective good faith" because "[i]n most such cases[ ] there is no police illegality and thus nothing to deter." *Id.* at 920–21, 104 S.Ct. 3405. This exception to the exclusionary rule does not apply, however, where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405 (internal quotation marks and citations omitted); *see also Washington*, 380 F.3d at 241 (noting that "it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance"). We have since held that an affidavit must establish "a minimally sufficient nexus between the illegal activity and the place to be searched" to suffice for good-faith reliance. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir.2004).

*Id.* at 485-86. Additionally, in *United States v. Rice*, 405 F. App'x. 959, 963 (6th Cir. 2010), the Sixth Circuit explained that:

> The fact that an affidavit fails to establish probable cause is not determinative of whether that affidavit could support a reasonable belief in the validity of the search warrant for purposes of the exclusionary rule. *United States v. McPhearson,* 469 F.3d 518, 526 (6th Cir.2006). The reason is that the standard for

applying the good faith exception of *Leon* is lower than that which is required to find probable cause.

A police officer's objectively reasonable reliance on a signed search warrant requires "a less demanding showing" than the "substantial basis" threshold required for probable cause. *Higgins,* 557 F.3d [381,] 391 (6th Cir.2009) (quoting *Carpenter,* 360 F.3d at 595 (6th Cir.2004) (en banc)). "If the inquiries were identical, the probable cause determination would subsume the good faith exception." *McPhearson,* 469 F.3d at 526 (citing *United States v. Laughton,* 409 F.3d 744, 749 (6th Cir.2005)).

But, in *Abernathy, supra*, the Sixth Circuit recognized that in *Leon,* the Supreme Court made clear that the good faith exception does not apply "'if the magistrate or judge in issuing a warrant was misled by information in the affidavit' that violated *Franks*[.]"

For the reasons discussed in the preceding section, the Court finds that, in applying the less demanding *Leon* good faith standard, the police would have had reasonable grounds to believe that the search warrant was properly issued. The warrant was sought in connection with alleged drug activity related to an individual who lived in the residence. The information in Det. Buchs' affidavit established at least a minimally sufficient nexus between the illegal activity—illegal drug possession or trafficking—and the placed to be searched—the residence.

Additionally, the Court finds that the information in the affidavit regarding the Facebook picture is neither incomplete nor misleading, and did not violate *Franks*. Indeed, while the parties' stipulation is that the picture was *posted* on Facebook no later than December 2016, it was *presently available* on the Facebook page when Det. Buchs downloaded it during his investigation in September 2017.

Based upon all of the facts, the Court concludes that the good faith exception established in *Lean* is available to the police even if it were determined that probable cause did not exist for the issuance of the warrant.

13

C.  **CONCLUSION**

For all of the foregoing reasons, Willis' motion to suppress is denied.

**IT IS SO ORDERED**.


Dated: January 31, 2018

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**